# United States Court of Appeals
## For the First Circuit

---

No. 11-2179

MARY JANE MCGAIR; JOSEPH MCGAIR,

Plaintiffs, Appellants,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

---

Lewis J. Paras, with whom Joseph A. Kelly, Petrarca and McGair, Inc., and Baluch, Gianfrancesco & Mathieu were on brief, for appellants.
Gerald Joseph Nielsen, with whom Joseph J. Aguda, Jr., Nielsen Law Firm, L.L.C., David W. Zizik, and Zizik, Powers, O'Connell, Spaulding & Lamontagne, PC were on brief, for appellee.

---

September 4, 2012

---

**LIPEZ**, **Circuit Judge**.  This appeal arises from a dispute over the scope of a flood insurance policy.  In July 2006, appellants, Mary Jane and Joseph McGair, purchased a flood insurance policy from appellee, American Bankers Insurance Company of Florida ("American Bankers").  Their policy was issued pursuant to a federal program under which private insurers issue and administer standardized flood insurance policies, and all claims are paid by the government.  After a 2010 flood damaged their home in Warwick, Rhode Island, including the contents of their basement, the McGairs sought compensation.  American Bankers disallowed much of the amount claimed, asserting that the contents of the McGairs' basement were not covered by their policy.  Subsequently, the McGairs brought suit in federal court, arguing that the Declarations Page of their policy created an ambiguity as to the scope of coverage and that, under federal common law and general insurance law principles, this ambiguity should be resolved in their favor.  The district court disagreed, entering summary judgment in favor of American Bankers.  We affirm.

## I.

In reviewing a decision on a motion for summary judgment, we consider the facts in the light most favorable to the non-moving party.  Guay v. Burack, 677 F.3d 10, 13 (1st Cir. 2012).

-2-

## A.  The National Flood Insurance Program

The McGairs' flood insurance policy was written pursuant to the National Flood Insurance Program ("NFIP"), a federal program created by the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §§ 4001-4129.  Noting that private insurers were not providing adequate flood insurance in many areas, Congress designed the NFIA to increase the availability of flood insurance by offering subsidized insurance.  See id. § 4001(b).  The NFIP is administered by the Federal Emergency Management Agency ("FEMA") and backed by the federal treasury, which is responsible for paying claims that exceed the revenue generated by premiums paid under policies issued pursuant to the program.  See id. § 4011(a) (charging Administrator of FEMA with establishing NFIP); id. § 4017(a) (creating fund in United States Treasury to pay for NFIP); see also Palmieri v. Allstate Ins. Co., 445 F.3d 179, 183 (2d Cir. 2006) (describing NFIP).  Accordingly, Congress authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid."  42 U.S.C. § 4019.

In 1983, FEMA created the Write-Your-Own ("WYO") program, permitting private insurance companies to issue policies as part of the NFIP.  44 C.F.R. §§ 62.23-24.  As part of the WYO program, FEMA promulgated regulations prescribing the terms of the Standard Flood Insurance Policy ("SFIP") to be used by WYO companies.  See id.

pt. 61, app. A(1).  By regulation, "[t]he Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator."  Id. § 61.13(d). Thus, when private companies issue WYO policies, they "act as 'fiscal agents of the United States,' 42 U.S.C. § 4071(a)(1), but they are not general agents. . . .  In essence, the insurance companies serve as administrators for the federal program.  It is the Government, not the companies, that pays the claims." Palmieri, 445 F.3d at 183-84 (quoting C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 (3d Cir. 2004)).  Alternatively put:

> FEMA provides a standard text for all NFIP policies and forbids WYOP companies from making changes; FEMA's interpretations of the policy bind all WYOP participants; FEMA decides what rates may be charged; all premiums are remitted on to FEMA (minus a small fee); if WYOP companies pay out on a claim they get reimbursed by FEMA; likewise with litigation costs.

Downey v. State Farm Fire & Cas. Co., 266 F.3d 675, 679 (7th Cir. 2001).

Two limitations on coverage provided by the SFIP are relevant to this case.  Article III(A)(8) of the SFIP states that coverage for items located in the basement of a dwelling is limited, and it identifies seventeen categories of fixtures (e.g.,

-4-

central air conditioners, furnaces, insulation) covered under the policy. Article III(B)(3) similarly limits coverage for personal property in a basement and identifies only three covered categories of personal property (all major appliances). By the terms of the SFIP, these items are the only contents of a basement for which a policy-holder may seek reimbursement. In addition to limiting the potential losses due to flooding of basements, these limitations serve to encourage construction that minimizes the risk of flooding (e.g., elevated foundations and buildings without basements).

The McGairs' policy, purchased from American Bankers in 2006, is a Preferred Risk Policy ("PRP") incorporating the SFIP.[1] It states that flood insurance is provided "under the terms of the National Flood Insurance Act of 1968 . . . , and Title 44 of the Code of Federal Regulations." Reflecting the prohibition on alteration of the SFIP, the McGairs' policy also provides that it "cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." As such, it includes Articles III(A)(8) and (B)(3) of the SFIP limiting coverage for the contents of the basement of an insured dwelling.

The McGairs' policy also includes a Declarations Page indicating the coverage purchased, the policy limits, and the

---

[1] The important relationship between a PRP and the SFIP is discussed in the analysis section.

deductible.  The "Rating Information" section of the Declarations Page indicates that the McGairs have a finished basement and states that the contents of their home are located in the "basement and above."  The Declarations Page also provides that the contents of the home are covered by the policy, up to $100,000, and identifies none of the limitations stated in the SFIP.  The parties agree that the Rating Information section includes information provided by the McGairs to American Bankers for the purpose of calculating the premiums to be paid.

## B.  The McGairs' Claim

In late March 2010, the McGairs' home was damaged by a flood.  The flooding caused damage to furniture, furnishings, appliances, and fixtures, including such items located in the McGairs' finished basement.  On March 31, 2010, the McGairs filed a claim based on the damage caused to their home by the flood.

Their claim was assigned to an independent adjuster, Sweet Claim Service, Inc., and, on April 1, 2010, adjuster Shawn Hamil investigated the damage to the McGairs' home.  The McGairs allege that Hamil engaged in "predatory conduct" during the investigation.  Specifically, they assert that he attempted to intimidate Mary Jane McGair by telling her that they did not have coverage for the damage to their home.  Additionally, the McGairs assert that Hamil encouraged them to make a misrepresentation by claiming that the damage to their finished basement was to drywall,

which was covered under their policy, instead of wood paneling, which was not. The McGairs refused to do so, and Hamil prepared a report for American Bankers recommending payment of $4,307.91 to settle the claim.[2]

Although American Bankers issued a check to the McGairs based on the amount determined by Hamil, the McGairs refused to accept the payment. Claiming $40,614.52 in damages, the McGairs sent American Bankers documentation of the repair estimates totaling this amount. The primary disagreement between the parties concerned the scope of the policy's coverage of the contents of the McGairs' basement. The McGairs insisted that, per the Declarations Page, the entire contents of their basement were covered by their policy without limitation. American Bankers disagreed. Relying on the limitations contained in the SFIP, it disallowed the majority of the McGairs' claim. In a series of letters in mid- to late 2010, American Bankers and the McGairs continued to insist on their respective positions.

On February 9, 2011, the McGairs filed suit in the United States District Court for the District of Rhode Island seeking a declaratory judgment establishing their entitlement to the full amount they claimed, as well as damages for breach of contract and

---

[2] There is a small discrepancy in the parties' descriptions of the payment recommended by Hamil. However, this small difference -- approximately $100 -- is not relevant to the issue before us.

bad faith dealing under state law.  Both parties moved for summary judgment.

American Bankers argued that the McGairs were bound by the terms of the SFIP because the NFIP specified that the company could not alter the terms of the SFIP, and the McGairs were charged with knowledge of this prohibition.  Therefore, any supposed discrepancy between the SFIP and the Declarations Page was irrelevant.  In turn, the McGairs argued that the SFIP and Declarations Page should be interpreted pursuant to federal common law and standard insurance law principles, including the familiar principle that any ambiguity in the contract should be read in their favor.  They added that such an ambiguity existed because their Declarations Page states that the contents of their home are located in the "basement and above," without identifying any limitation on the coverage of contents of their basement.  This unqualified statement, they asserted, is inconsistent with the limitations imposed by Sections III(A)(8) and (B)(3) of the SFIP.  Thus, reading this supposed ambiguity in their favor, they argued that the contents of their basement are covered under their policy without limitation.

The district court granted summary judgment for American Bankers, explaining that the regulations governing the NFIP provide that parties cannot alter the terms of the SFIP and that the McGairs were charged with knowledge of that prohibition.  Thus, it

found that the SFIP's limitations on coverage of the contents of a basement applied in this case. The McGairs now appeal.

## II.

We are first confronted with a jurisdictional issue raised by American Bankers. It urges us to hold that we have jurisdiction over this action pursuant to 42 U.S.C. § 4072, which authorizes "an action against the Director [of FEMA]" when a claim made under an NFIP policy is wholly or partially disallowed. Doing so would require us to hold that § 4072's reference to "the Director" includes the Director's fiscal agent, i.e., the WYO company that issued the policy in question. This jurisdictional question is significant because § 4072 confers exclusive jurisdiction on federal district courts. If jurisdiction exists under that statute, claims against WYO companies concerning NFIP policies may not be brought in state courts.[3]

---

[3] Although we have never addressed the issue, several circuits have held that § 4072's reference to "the Director" includes the WYO company that issued the policy. See, e.g., Palmieri, 445 F.3d at 187 (finding jurisdiction under § 4072 and declining to consider whether federal question jurisdiction also exists under 28 U.S.C. § 1331); Gibson v. Am. Bankers Ins. Co., 289 F.3d 943, 946-47 (6th Cir. 2002) (finding jurisdiction under § 4072 and not discussing § 1331); Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 167 (3d Cir. 1998) (finding jurisdiction under both § 4072 and § 1331). Other circuits have declined to address the issue, noting that federal question jurisdiction exists under 28 U.S.C. § 1331 regardless of whether jurisdiction may also be based on § 4072. See, e.g., Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 379-80 (4th Cir. 2004); Newton v. Capital Assurance Co., Inc., 245 F.3d 1306, 1308-09 (11th Cir. 2001). However, at least one circuit has held that subject matter jurisdiction does not exist under § 4072, but does under 28 U.S.C. § 1331. See Downey v. State

Despite the exhortation of American Bankers, we will not take up the § 4072 jurisdictional issue unnecessarily. The McGairs did not bring their claims in state court. Even though the parties agree that federal jurisdiction exists under § 4072, that agreement cannot bind us. We have an obligation "to inquire sua sponte into [our] subject matter jurisdiction." Godin v. Schencks, 629 F.3d 79, 83 (1st Cir. 2010). Given the circuit split on this issue, the lack of a dispute between the parties, and the fact that we do not have the benefit of briefing on both sides of the § 4072 issue, we will not take up the question where it has no bearing on the outcome of this appeal.

Instead, we conclude that federal question jurisdiction exists under 28 U.S.C. § 1331. No circuit has found that a claim such as the McGairs' fails to present a federal question. Interpretation of insurance policies issued pursuant to the NFIP is a matter of federal law. See Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 16 n.2 (1st Cir. 1986). Accordingly, the McGairs' "right to relief . . . necessarily depends on the resolution of a substantial question of federal law." Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 380 (4th Cir. 2004) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27 (1983)) (internal quotation marks omitted). Because we have federal question jurisdiction under 28 U.S.C. §

_____

Farm Fire & Cas. Co., 266 F.3d 675, 680-81 (7th Cir. 2001).

1331, we decline to decide whether we also have jurisdiction under § 4072 where the issue is not squarely presented.

**III.**

We review the grant of summary judgment de novo. <u>Sch. Union No. 37</u> v. <u>United Nat'l Ins. Co.</u>, 617 F.3d 554, 558 (1st Cir. 2010). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Rosciti</u> v. <u>Ins. Co. of Penn.</u>, 659 F.3d 92, 96 (1st Cir. 2011).

## A. The Nature of the McGairs' Policy

On appeal, the McGairs make essentially the same arguments that they raised before the district court: 1) the Declarations Page is part of their policy, 2) there is an ambiguity in their policy created by a discrepancy between the Declarations Page and other provisions of the policy, and 3) as a matter of general principles of insurance law and federal common law, this ambiguity should be resolved in their favor. However, they never directly address the key aspect of the district court's decision -- the fact that, any ambiguity notwithstanding, American Bankers did not have the authority to alter the terms of the SFIP through the Declarations Page. Rather, the McGairs attempt to circumvent this issue by suggesting that there is a meaningful difference between their PRP and the SFIP, and that the terms of a PRP are not subject to the prohibition against alteration applied to the SFIP. They

point out that the PRP is not referenced in the statute creating the NFIP or the FEMA regulations, but only in the FEMA National Flood Insurance Manual (the "Manual"). They also note that the 2011 version of the Manual is the first in which the PRP was explicitly identified as being the same as the SFIP.

There is no authority, however, for the proposition that a PRP alters the material terms of the SFIP in any way relevant to this case, and the governing regulations and structure of the NFIP indicate that it does not.[4] First, the McGairs' policy is labeled as a "Standard Flood Insurance Policy" and states that it "provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations." Accordingly, the policy itself belies the assertion that it is anything other than an SFIP. Furthermore, as noted, FEMA regulations require that all WYO policies issued pursuant to the NFIP use the SFIP. See 44 C.F.R. § 61.13(d). Thus, by regulation, the McGairs' policy must be an SFIP and include the limitations on coverage contained therein.[5]

---

[4] The 2011 Manual states that "The Preferred Risk Policy (PRP) is a Standard Flood Insurance Policy (SFIP), written using the Dwelling Form or General Property Form, that offers low-cost coverage to owners and tenants of eligible buildings located in the moderate-risk"

[5] It is true that the 2011 Manual is the first version to explicitly state that the PRP is an SFIP. However, the general description of the PRP offered in earlier versions is otherwise identical to that in the 2011 Manual. Regardless, while the Manual offers useful guidance on the structure of the NFIP, it does not

-12-

**B. Coverage of the Contents of the McGairs' Basement**

The McGairs do not argue that they are entitled to the benefit that they claim under the terms of the SFIP. Rather, they insist that there is an inconsistency between their Declarations Page and the SFIP as to what contents of their basement are covered. The McGairs argue that this ambiguity should be interpreted in their favor, rendering the SFIP's limitations inoperative and the entire contents of their basement covered without limitation. This argument is meritless.

There can be no ambiguity between the SFIP and the McGairs' Declarations Page because the terms of the SFIP control. As noted above, the regulations governing the NFIP provide that "no provision of the [SFIP] shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." 44 C.F.R. § 61.13(d). In fact, the SFIP itself states that it "cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." Id. pt. 61, app. (A)(1), art. VII(D); see also Palmieri, 445 F.3d at 183 (noting same); Phelps, 785 F.2d at 19 (noting same). Thus, as a matter of law, any discrepancy between the SFIP and an accompanying Declarations Page must be resolved in

---

trump FEMA regulations. See Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) (noting that interpretations in "agency manuals . . . lack the force of law[, and] do not warrant Chevron-style deference").

favor of the SFIP, unless the Federal Insurance Administrator has given express written consent for alterations to the policy.  The McGairs do not argue that any such consent has been given here.

The Second Circuit recently considered a similar issue in Jacobson v. Metropolitan Property & Casualty Insurance Co., 672 F.3d 171 (2d Cir. 2012).  In that case, the appellee insurance company denied a claim filed pursuant to an SFIP because the appellant failed to comply with the proof-of-loss requirements established by the policy. There, as here, "[appellant's] argument rest[ed] on the idea that the SFIP at issue . . . must be interpreted like any private insurance contract, thus allowing him the benefit of a more liberal interpretation [of the relevant provisions]."  Id. at 175.  The Second Circuit rejected this argument, noting that because the policy was issued pursuant to the NFIP, the requirements imposed by the SFIP "must be strictly construed and enforced."  Id.  The court explained that "[w]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." Id. (quoting Wright v. Allstate Ins. Co., 415 F.3d 384, 388 (5th Cir. 2005)) (internal quotation marks omitted); see also Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 64 (1984) (stating that a participant in a government program has "a duty to familiarize itself with the legal requirements for cost reimbursement").  It added that "[i]n

the context of federal insurance policies, the Supreme Court has long held that an insured must comply strictly with the terms and conditions of such policies."  Jacobson, 672 F.3d at 176 (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947)).

The McGairs' claim fails for the same reason.  Even if we acknowledged that their Declarations Page creates an ambiguity as to the scope of coverage, which we do not,[6] general insurance law principles applicable to the interpretation of ambiguities must give way in light of the prescription by federal regulation of the terms of the SFIP.  Because American Bankers had no authority to alter the terms of the SFIP through the Declarations Page,[7] there is no need to resolve any supposed inconsistency between the SFIP and Declarations Page.  The terms of the SFIP control.

Accordingly, Wagenmaker v. Amica Mutual Insurance Co., 369 F. App'x 149 (1st Cir. 2010), which the McGairs rely upon, is not applicable here.  In that case, the appellant was a passenger in an automobile who sought benefits from the driver's insurer after she was injured in a collision with an uninsured motorist. The declarations page of the driver's policy indicated that the car

---

[6] The description offered by the Declarations Page was only a summary, subject to exclusions and limitations contained in the policy itself.  In fact, a notice provided with the Declarations Page instructs the insured to "review your flood insurance policy, Declarations page, and any applicable endorsements for a complete description of your coverage."

[7] We do not suggest that it did so.

was not covered for damages by an uninsured driver, reflecting the driver's request, nine months earlier, that his uninsured motorist coverage be cancelled. However, the boilerplate terms of the policy had not been changed to reflect this cancellation, and the appellant argued that she was entitled to benefits pursuant to these terms. In affirming a judgment in favor of the insurer, we explained that the terms of a policy include those on the declarations page, which is of "paramount importance" since it is tailored to the policy at issue. Id. at 150. Thus, we concluded that the unambiguous declarations page was controlling. Id. at 151. However, Wagenmaker involved a private auto insurance policy, not a policy issued as part of a federal program dictating its terms. Here, even though the McGairs' Declarations Page is part of their policy, by law it may not alter the terms of the SFIP without the express written consent of the Federal Insurance Administrator. See 44 C.F.R. § 61.13(d). Thus, the principle articulated in Wagenmaker is inapposite.[8]

## C. Potential Liability of American Bankers

The McGairs seek to escape the rule requiring strict construction of the SFIP by arguing that any award in this case

---

[8] The other cases cited by the McGairs are similarly unhelpful. These decisions concern situations in which there is an ambiguity in the SFIP itself, or some factual dispute about whether the insured received a copy of the policy or what structure was actually covered by the policy. None of the cases cited support the proposition that a declarations page may create an ambiguity in an otherwise unambiguous SFIP.

will not actually be paid from the federal treasury, but by American Bankers, because the company acted outside the scope of its agreement with the government in preparing the Declarations Page. This argument also fails.

As noted above, the NFIA provides that WYO companies act as "fiscal agents of the United States." 42 U.S.C. § 4071(a)(1). The agreement between a WYO company and the government is prescribed by federal regulations, and Article I of the agreement provides that "the Federal Treasury will back all flood policy claim payments by the Company." 44 C.F.R. pt. 62, app. A, art. I. Similarly, the provision of the agreement dealing with loss payments states that "[l]oss payments under policies of flood insurance shall be made by the [WYO] Company from Federal funds retained in the bank account(s) established under Article II." Id. art. III(D)(1). "Loss payments include payments as a result of litigation that arises under the scope of [the NFIP]." Id. art. III(D)(2). Additionally, numerous decisions have made it clear that "a money judgment against a WYO company for SFIP coverage is a charge on the federal treasury." Studio Frames, 483 F.3d at 244; see also Palmieri, 445 F.3d at 184 ("It is the Government, not the companies, that pays the claims.").

Nonetheless, it is true that there are some circumstances in which a WYO company may be required to pay damages. The governing regulations provide that the Federal Insurance

-17-

Administrator may choose not to reimburse a WYO company for any award or judgment against it, or for the costs of litigation, if "the litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of [the NFIP], and/or involves issues of agent negligence." 44 C.F.R. pt. 62, app. A, art. III(D)(3); see also Grissom v. Liberty Mut. Fire Ins. Co., 678 F.3d 397, 399 (5th Cir. 2012) (recognizing same).

The McGairs allege only that there is an ambiguity as to whether the contents of their basement were covered by their policy. Accordingly, they seek a declaratory judgment that their loss is covered by their policy, as well as damages for a breach of contract arising from the denial of their insurance claim.[9] The McGairs do not allege that American Bankers acted outside the scope of its obligations under the NFIP. They seek damages in contract and do not allege negligence. Theirs is not remotely a claim on which a WYO company may be required to pay damages. Thus, the McGairs may not escape the rules requiring strict construction of the SFIP.

Affirmed.

---

[9] The McGairs' complaint also raised a claim under Rhode Island law that American Bankers did not evaluate their loss claim in good faith. However, the district court rejected this claim and the McGairs do not raise this issue in their appeal. Accordingly, we need not address whether this alleged conduct gives rise to potential liability on the part of American Bankers.