**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-2923

_____

PSYCHIATRIC SOLUTIONS, INC.,
Appellant

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INS. CO.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-05237)
District Judge:  Hon. L. Felipe Restrepo

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 28, 2016

Before:  McKEE, *Chief Judge*, JORDAN, and ROTH, *Circuit Judges*.

(Opinion Filed:  June 16, 2016)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

This dispute deals with the National Flood Insurance Program ("NFIP"), which administers flood insurance claims by an arrangement with private insurers that allows them to issue certain Standard Flood Insurance Policies as fiscal agents of the United States Treasury. Psychiatric Solutions, Inc. ("Psychiatric") appeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of an NFIP insurer, Wright National Flood Insurance Company, formerly known as Fidelity National Property and Casualty Insurance Company ("Fidelity") on a flood claim by Psychiatric. We will affirm.

I.    **BACKGROUND**[1]

Under the NFIP, Fidelity issued Standard Flood Insurance Policies ("SFIPs") implementing terms and conditions set by the Federal Emergency Management Agency (FEMA). *See Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 807 (3d Cir. 2005). One of those policies was issued to Psychiatric and provided flood insurance coverage for its property located in Fort Washington, Pennsylvania. The policy was effective from September 4, 2010, through September 4, 2011, and covered damage to both the building and its contents.

On August 28, 2011, a few days before the Fidelity policy was set to expire, Psychiatric sustained flood damage from Hurricane Irene. As bad luck would have it, on September 8, 2011, just four days after the Fidelity policy expired, Psychiatric again

_____

[1] Because we write solely for the parties, we recite only those facts necessary to resolve this appeal.

2

suffered flooding, this time due to Tropical Storm Lee. An inspection of Psychiatric's property did not occur between the two weather events, and it was not until September 11, 2011 that an independent adjuster inspected the property. By that date, Psychiatric had discarded the items of property whose value is at issue here.

After inspections and approval, Fidelity paid Psychiatric $500,000 for the damage Hurricane Irene inflicted on its building. Because the building's contents, having already been discarded, were not available for inspection, the adjuster prepared a cash value estimate in the amount of $170,368.80, based on Psychiatric's list of contents. Upon Fidelity's request for additional supporting documentation showing that the items on the list were in fact damaged by Hurricane Irene as opposed to Tropical Storm Lee, the adjuster prepared a revised estimate in the amount of $134,275.03.

To receive payment for either of those estimated amounts, the SFIP required Psychiatric to submit for approval a signed and sworn proof-of-loss statement by FEMA's deadline.[2] Typically, that deadline is sixty days after the damage occurred, but FEMA extended the proof-of-loss deadline for Hurricane Irene damage until January 23, 2012. When a proof of loss is filed after FEMA's deadline, FEMA may grant a waiver to allow the claim to be paid despite its lateness. Here, both the $170,368.80 proof of loss and the $134,275.03 proof of loss were filed after the January 23, 2012, deadline. After some disagreement as to what damages were caused by which storm, Fidelity verified the second claim for $134,275.03 and requested a waiver from FEMA. FEMA approved the

---

[2] A "proof of loss" is a document that lists the damage and how it occurred.

3

request and issued a payment to Fidelity in the amount of $134,275.03, bringing

Psychiatric's total recovery to $634,275.03. In an attempt to recover the remaining

$36,092.77,[3] Psychiatric subsequently requested a waiver from FEMA on its initial claim

for $170,368.80, but FEMA denied that request because the $36,092.77 figure was "not

supported by appropriate documentation." (App'x C at 510a, 561a.)

Psychiatric filed suit against Fidelity for the remaining $36,092.77, with claims

sounding in contract (Count I) and, somewhat vaguely, in fraud and misrepresentation

(Count II).[4] The District Court granted Fidelity's motion for summary judgment, and

denied Psychiatric's motion for reconsideration. Psychiatric now appeals the court's

grant of summary judgment.[5]

---

[3] That figure represents the difference between the first untimely proof-of-loss estimate of $170,368.80 and the $134,275.03 Psychiatric was actually paid under the second untimely-but-approved proof of loss.

[4] As mentioned below, Psychiatric has not committed itself to a particular theory of recovery, especially with respect to its extra-contractual claims. However, Psychiatric does not seem to dispute the District Court's construction of Count II as sounding in fraud and misrepresentation, so, in the absence of any greater clarity from Psychiatric, we will describe those claims as did the District Court. As we ultimately conclude, however, the NFIP does not authorize Psychiatric to bring such claims under either state or federal common law.

[5] Although Psychiatric's notice of appeal and opening brief mention both the order granting summary judgment and the order denying its motion for reconsideration, nowhere in its opening brief does Psychiatric raise any arguments with respect to the motion for reconsideration or otherwise develop that separate issue. Psychiatric's "passing reference" to the motion for reconsideration is insufficient to put the issue properly before us, so we deem the argument in that regard waived on appeal. *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 447 (3d Cir. 1992).

4

## II. DISCUSSION[6]

Our review of an order of summary judgment is plenary. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, where the nonmovant "fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

Throughout the litigation of its claims, Psychiatric has been less than clear about the legal theories under which it hopes to prevail, but it seems to contend that Fidelity breached its contract under the rules of the NFIP (Count I), and that Fidelity is otherwise liable for fraud or misrepresentation under federal common law (Count II). As to the first claim, Psychiatric has now conceded that it "does not have a viable claim under Count I" because it did not submit a timely proof of loss or obtain a waiver for the claimed amount from FEMA. (Psychiatric's Reply Br. at 4.) Because Psychiatric has abandoned its

---

[6] The District Court had exclusive jurisdiction over this matter under the National Flood Insurance Act of 1968, 42 U.S.C. § 4072. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

5

contract claim on appeal, we will affirm the District Court's grant of summary judgment on Count I.[7]

Turning to the fraud and misrepresentation theories of Count II, Psychiatric acknowledges our precedent indicating that the NFIP preempts such claims when brought under state law but insists that it has brought such claims only under federal common law. (Psychiatric's Opening Br. at 15-18.) According to Psychiatric, it was error for the District Court to dismiss its federal common law claims without reliance on our opinions in *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161 (3d Cir. 1998) and *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263 (3d Cir. 2004). It is, however, Psychiatric's own reliance on those cases that is misplaced, because together they stand only for the proposition that both state "contract claims" and "state claim[s] 'sounding in tort' but 'intimately related to the disallowance of [an] insurance claim" are preempted under the NFIP. *C.E.R. 1988*, 386 F.3d at 272 (quoting *Van Holt*, 163 F.3d at 167). Neither of those precedents authorizes a party to refashion state claims as claims under federal common law. To the contrary, as recognized by our sister circuits, "[i]t would frustrate the intent of Congress to allow preempted state law claims to proceed under the guise of federal common law." *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773 (8th Cir. 2013);

---

[7] Despite its concession that it cannot prevail under its breach of contract theory, Psychiatric presses before us the entirely new argument that Fidelity, by acting outside the scope of the NFIP, "created a new insurance contract" between the parties that was divorced from the SFIP's proof-of-loss requirements. (Psychiatric's Reply Br. at 4.) Before the District Court, Psychiatric did not argue for the existence of a "new insurance contract," and so that argument is waived. *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

*see also Wright v. Allstate Ins. Co.*, 500 F.3d 390 (5th Cir. 2007) (holding that an SFIP policy-holder could not bring extra-contractual claims for fraud and negligent misrepresentation under federal common law). Because Psychiatric could not bring its fraud and misrepresentation claims under either state or federal common law, the District Court properly entered summary judgment in favor of Fidelity on Count II as well.[8]

## III.   CONCLUSION

For the foregoing reasons, we will affirm the District Court's orders granting summary judgment and denying Psychiatric's motion for reconsideration.[9]

---

[8] Although we need not consider the substance of Psychiatric's extra-contractual claims, we harbor serious doubts as to their merit, even under a favorable standard of review. Psychiatric alleges that Fidelity made fraudulent misrepresentations when requesting the waiver from FEMA because it told FEMA that "[t]here was a disagreement about which items were damaged by which storm" and that "[t]he insured subsequently agreed to the above damages and submitted the signed [proof of loss] on January 31, 2012." (App'x C at 651a (DC Opinion at 9 n.5).) The District Court found that no material fact was misrepresented because: "[b]y signing the [proof of loss] for $134,276.03, Psychiatric Solutions did agree to this figure"; the parties actually had "disagreed as to the damages"; and "the waiver granted by FEMA was explicitly for $134,276.03." (*Id.*). Furthermore, as the District Court observed, the alleged misrepresentation was not made to Psychiatric, but to FEMA.

[9] *See supra* n.5.